|                                            |                         |
| ------------------------------------------ | ----------------------- |
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | <u>**NOT FOR PUBLICATION**</u> |
| VICTOR OLIVO,<br><br>        Plaintiff,<br><br> – against –<br><br>CITY OF NEW YORK, et al.,<br><br>        Defendants. | **<u>MEMORANDUM & ORDER</u>**<br><br>14-CV-4966-ERK |

KORMAN, *J.*:

  Plaintiff Victor Olivo ("Olivo") filed this § 1983 action against the City of New York, former New York City Mayor Michael Bloomberg, former New York City Police Commission Raymond Kelly, and John Does 1–6. The defendants have filed the instant motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## BACKGROUND

  Olivo filed the complaint underlying this action on August 20, 2014, and alleges having "presented a Notice of Claim to the Defendants City and NYPD" on September 2, 2011. Compl., ECF No. 1, at 1 & ¶ 34. The complaint alleges that two unknown police officers (John Does 1–2) arrested Olivo without probable cause on or about August 23, 2011. *Id.* at ¶¶ 15, 30. After transporting Olivo to the 83rd precinct, he was held for six days before being arraigned, during which time he was deprived of necessary medications. *Id.* at 24–25. The delay in arraignment was apparently due in part to a third unknown officer (John Doe 3), who refused to bring Olivo to a court for arraignment because the officer "did not want to assign two officers to transport [Olivo] to the Red Hook Community Justice Center." *Id.* at ¶ 22.

The complaint contains few factual assertions and does not state the circumstances of Olivo's arrest, nor what transpired once the police eventually transported Olivo to Kings County Criminal Court for arraignment. Nevertheless, the affidavit submitted by Olivo's counsel in relation to the instant motion explains some of the facts surrounding the arrest. Specifically, the affidavit states (1) that "[o]n August 23, 2011, members of the New York City Police Department . . . arrested the plaintiff and charged him with possessing an open container containing an alcoholic beverage," and (2) that "John Does checked the Plaintiff's identification and determined the existence of a warrant issued for failure to answer a summons issued for the same violation." Pl.'s Aff. Opp'n Rule 12(c) Mot., at ¶¶ 1–2.

Olivo's complaint alleges that his "employment was terminated" as a result of his detention and that Olivo "suffered pain and physical discomfort, as well as emotional distress." Compl., at ¶ 26–28. The complaint also states that Olivo's "rights under the New York State and United States Constitutions" were violated "as a result of policies and customs of the City, its Mayor, Michael Bloomberg, its Police Department, the NYPD and the Police Commissioner Raymond Kelly." *Id.* at ¶¶ 31, 34. He "sues each and all Defendants (except the CITY) in both their individual and official capacities." *Id.* at ¶ 14. Four causes of action are asserted, none of which are based on state law: (1) "unlawful seizure and detention under § 1983" against all defendants; (2) "unlawful detention under § 1983" against all defendants; (3) "failure to instruct, supervise and control cognizable under *Monell* and 42 U.S.C. § 1983 against the City & Commissioner Kelly"; and (4) "failure to intercede to prevent violation of plaintiff's constitutional rights cognizable under 42 U.S.C. § 1983 against John Doe #3."

On December 24, 2014, Magistrate Judge Orenstein ordered that the defendants provide Olivo with the names, shield numbers, and addresses of all officers involved in Olivo's arrest.

Order, Minute Entry, Dec. 24, 2015. Defendants complied with this order on March 25, 2015, according to the affidavit submitted by Olivo's attorney. Pl.'s Aff. Opp'n Rule 12(c) Mot., ECF No. 18, at ¶ 24. On April 1, 2015, Judge Orenstein stayed discovery pending the resolution of the instant Rule 12(c) motion submitted by the defendants. Order, April 1, 2015, ECF No. 11. Defendants' motion seeks the dismissal of Olivo's entire complaint as I explain below.

## DISCUSSION

### I.  *Standard of Review*

Parties may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Hogan v. Fischer*, 738 F.3d 509, 514-15 (2d Cir. 2013). To survive a defendant's 12(c) attack, a plaintiff's "complaint must contain sufficient factual matters to state a claim to relief that is plausible on its face." *Kirkendall v. Halliburton*, 707 F.3d 173, 178-79 (2d Cir. 2013). When adjudicating 12(c) motions, courts accept the complaint's factual allegations and draw all reasonable inferences in the plaintiff's favor. *Id.* at 178. A court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). While a court must accept the truth of factual allegations, it need not credit "a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly,* 550 U.S. at 555). Thus, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly,* 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. *Mayor Bloomberg & Commissioner Kelly*

Defendants seek dismissal of all claims against former Mayor Michael Bloomberg and former Police Commissioner Raymond Kelly in their individual capacities because "they were not personally involved in the incident alleged in the complaint." Defs.' Mem. Supp. Rule 12(c) Mot., ECF No. 13, at 3. Specifically, "[t]here are no allegations that Bloomberg or Kelly had any personal dealings with plaintiff and it would be highly unlikely that the mayor . . . and his chief of police would personally . . . arrest . . . one individual in . . . Brooklyn." *Id.* at 4.

"Section 1983 imposes liability for conduct which subjects, or causes to be subjected the complainant to a deprivation of a right secured by the Constitution and laws. Accordingly, personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (internal marks omitted) (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976)). The Second Circuit has held that a "defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 in several ways." *Id.* For example, the "defendant may have directly participated in the infraction"; "[a] supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong"; "[a] supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue"; and, lastly, "a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event." *Id.*

Olivo's brief in opposition does not address the arguments raised by the defendants. Moreover, Olivo's complaint contains no factual allegations explaining how Mayor Bloomberg or Commissioner Kelly personally contributed to his constitutional deprivations. Rather, the complaint states that the "city has an official policy . . . of . . . arraigning some arrestees at the Red Hook Community Justice Center, rather than the Kings County Criminal Court." Compl., at ¶ 29. This statement—of already questionable relevance—contains no factual assertion relating to Bloomberg or Kelly specifically. Moreover, in those other instances where the complaint alludes to the conduct of Bloomberg or Kelly, it does so in a conclusory fashion. Thus, the complaint alleges that Olivo's constitutional "violations were committed as a result of policies and customs of the City, its Mayor, Michael Bloomberg, its Police Department, the NYPD, and Police Commissioner Raymond Kelly," and that "KELLY [and] BLOOMBERG . . . had knowledge of, or, had they diligently exercised their duties to instruct supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs . . . were going to be committed." *Id.* at ¶¶ 33, 55. The claims against Bloomberg and Kelly in their individual capacities are dismissed.

### III.    Monell *Claims*

Olivo asserts numerous claims against the City of New York as well as Mayor Bloomberg and Commissioner Kelly in their official capacities. The defendants seek to dismiss all of these *Monell* claims because "to hold a municipality [or its officers in their official capacity] liable under Section 1983, plaintiff must plead that the alleged violations were the result of an official policy or custom." Defs.' Mem. Supp. Rule 12(c) Mot., at 5. Olivo does not address these *Monell* issues in his opposition brief. Moreover, as explained earlier, Olivo's complaint does not contain any non-conclusory assertions suggesting that a municipal policy or

5

custom caused his deprivation of rights. I therefore dismiss all of Olivo's claims against the City, its departments, or its officials in their official capacities.

## IV. *State-Law Claims*

Olivo's complaint asserts no state-law cause of action. Nevertheless, Olivo alleges that he served a notice of claim in accordance with the "General Municipal Law of the State of New York." Compl., at ¶ 34. In an abundance of caution, the defendants thus seek an order dismissing any state-law claims on statute of limitations grounds "to the extent that the complaint can be construed to include any state law claims." Defs.' Mem. Supp. Rule 12(c) Mot., at 2 n.1. I decline the invitation to make a statute of limitations ruling on hypothetical claims that Olivo has not asserted.

## V. *Remaining Claims*

Thus, only three claims remain: (1) "unlawful seizure and detention under § 1983" against John Doe police officers 1–2; (2) "unlawful detention under § 1983" against John Doe police officers 1–2; and (3) "failure to intercede to prevent violation of plaintiff's constitutional rights cognizable under 42 U.S.C. § 1983 against John Doe #3." Defendants move to dismiss these remaining claims "as the three year statute of limitations on these claims has expired." Defs.' Mem. Supp. Rule 12(c) Mot., at 4 n.3. Specifically, defendants argue that more than three years has passed since the events underlying Olivo's complaint, yet Olivo has failed to amend his complaint "to substitute any identified officers in the place of the John Doe officers [originally named]." *Id.* Moreover, any attempt to amend the complaint now would be "futile as plaintiff's claims are time-barred, and do not relate back to the original complaint." *Id.*

To be clear, Olivo filed his complaint on August 20, 2014, approximately three days before the three-year statute of limitations applicable here expired. Olivo has not yet formally sought leave to amend his complaint to substitute the actual police officers for the John Doe defendants originally named in his complaint, although Olivo has known the identity of these officers since at least March 25, 2015, when the defendants provided that information through discovery. Thus, the question presented is whether Olivo may now amend his complaint to name the identified police officers involved in his arrest and detention. He may not.

Olivo acknowledges that the three-year statute of limitations has now expired and that naming John Doe defendants in his complaint does not itself allow him to circumvent the limitations period. He nevertheless argues that he should be granted leave to amend his complaint, and that his amended complaint should relate back to the date on which he timely filed his initial complaint. Federal Rule of Civil Procedure 15(c)(1)(A) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the law that provides the applicable statute of limitations allows relation back." New York law provides the applicable law for this § 1983 action. *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2009). Particularly relevant here is N.Y. C.P.L.R. § 1024, which provides that when a suit is brought against someone whose "name or identity" is unknown, the plaintiff may bring the action against that person "by designating so much of his name and identity as is known." Often such complaints are filed naming the defendant or defendants as John Doe. New York cases hold that where such a complaint is filed before the statute of limitations expires and where the identities of the actual defendants are discovered after the statute of limitations has expired, an amended complaint naming those actual defendants will be deemed to have been timely filed

under the relation back doctrine. *Hogan v. Fischer*, 738 F.3d 509, 518–19 (2d Cir. 2013) (citing *Bumpus v. N.Y.C. Trans. Auth.*, 66 A.D.3d 26 (N.Y. App. Div. 2d Dep't 2009)).

To take advantage of the relation back doctrine when filing a complaint naming John Doe defendants (1) the plaintiff must exercise due diligence in attempting to identify the defendants in question prior to the expiration of the statute of limitations, and (2) the plaintiff must describe the John Doe parties in the complaint in a manner that fairly apprises the actual parties that they were the intended defendants. *Bumpus*, 66 A.D.3d at 29–30. Again, parties may not utilize the relation back doctrine "unless they exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name and, despite such efforts, are unable to do so." *Bumpus*, 66 A.D.3d at 29–30. New York courts stress that "*[a]ny failure* to exercise due diligence to ascertain the 'Jane Doe's' name subjects the complaint to dismissal as to that party." *Id.* (emphasis added); *see JCG v. Ercole*, No. 11-cv-6844, 2014 WL 1630815, at *14 (S.D.N.Y. Apr. 24, 2014); *Temple v. N.Y. Cmty. Hosp. of Brooklyn,* 89 A.D.3d 926, 927–928 (N.Y. App. Div. 2d Dep't 2011) (concluding that "the plaintiff failed to exercise due diligence" in part, because when the responses to "some limited discovery demands" were "less than adequate, the plaintiff failed to promptly seek further discovery . . . and failed to properly and promptly seek assistance from the [New York] Supreme Court"); *Hall v. Rao*, 26 A.D.3d 694, 695 (N.Y. App. Div. 3d Dep't 2006) (denying relation back because plaintiff did not exercise sufficient due diligence prior to expiration of statute of limitations); *Scoma v. Doe*, 2 A.D.3d 432, 433 (N.Y. App. Div. 2d Dep't 2003) (same); *Doe v. New York*, No. 10-cv-1792, 2015 WL 1221495, at *12–13 (E.D.N.Y. March 16, 2015) (same).

The defendants argue that Olivo did not exercise due diligence in attempting to identify the police officers prior to the expiration of the statute of limitations. Indeed, Olivo's brief does

not allege that Olivo attempted to obtain the identities of the police officers. Instead, he alleges that any "attempted inquires at the precinct *would be* stonewalled." Pl.'s Mem. Opp'n Defs.' Rule 12(c) Mot., at 3 (emphasis added). Olivo also argues that the "identities of the actors in his complaint *would never* be revealed or clear without a Court order permitting discovery." *Id.* (emphasis added). Of course, this argument does not explain why Olivo failed to seek such a court order prior to the expiration of the statute of limitations. Indeed, the late Professor David Siegel has specifically suggested that where a prospective defendant is being evasive about furnishing his proper name, "[t]he plaintiff in that case should commence the action with appropriate description, effect timely service—using substitute means if needed, as they are likely to be—and thus secure jurisdiction of the misnamed or unnamed defendant, then use the disclosure devices to seek . . . the defendant's right name promptly, and, finally, move to amend the caption to insert it." David D. Siegel, New York Practice, § 189, 329 (5th ed. 2011). Indeed, Olivo obtained the names of the defendants in this case without difficulty through discovery. The problem is that he waited until the eleventh hour to file his complaint, and he provides no reason why he did not file it earlier. Significantly, Olivo filed a notice of claim against the City on September 2, 2011, 2 years and 11 months before he filed his complaint.

Separate and apart from obtaining the identities of the John Doe defendants through regular discovery mechanisms, Olivo had available to him another method of obtaining this information. As the leading New York appellate decision observed:

> [One] mechanism available when a governmental entity may know the identity of the unknown party, is the Freedom of Information Law (Public Officers Law art 8 [hereinafter FOIL]). In a case such as this involving a public employee, Public Officers Law § 89 would require the disclosure of the employee's name (*see Matter of Faulkner v Del Giacco*, 139 Misc 2d 790, 794 [1988] [disclosure of names of prison guards accused of inappropriate behavior]), but exempt from disclosure the employee's home

9

> address (*see* Public Officers Law § 87 [2] [b]; § 89 [2] [b]; [7]; *Matter of Pasik v State Bd. of Law Examiners*, 114 Misc 2d 397, 407-408 [1982], *mod* 102 AD2d 395 [1984]). . . . FOIL requests are designed to be acted upon by public agencies expeditiously, typically within five business days from receipt of a written request for nonexempt records (*see* Public Officers Law § 95 [1] [a]). The speed of the statute can prove useful to practitioners who, facing an approaching statute of limitations, seek to identify the "Jane Doe" party prior to the commencement of the action.

Moreover, even if it is true, as counsel for Olivo suggests, that it "was [his] experience in [prior] FOIL/FOIA litigation . . . that City agencies would not release information leading to the identification of officers participating in narcotics and warrant enforcement," Olivo had a proceeding available to him pursuant to Article 78 to compel disclosure of that information. Pl.'s Aff. Opp'n Defs.' Rule 12(c) Mot., at ¶ 13. Passing over the fact that nothing suggests that the defendants in the present case were officers assigned specifically to "narcotics or warrant enforcement," Olivo also had available to him pre-action discovery pursuant to N.Y. C.P.L.R. § 3102(c), which permits, among other things, "ascertaining the identities of prospective defendants." *Bumpus*, 66 A.D.3d at 33 (citing, inter alia, Matter of Alexander v. Spanierman Gallery, LLC, 33 A.D.3d 411 (N.Y. App. Div. 1st Dep't 2006)). Olivo's counsel does not argue that he made any effort to obtain the relevant information pursuant to these methods that I describe, nor that he asked the City informally for it.

In sum, Olivo did not "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant[s] by name." *Bumpus*, 66 A.D.3d at 29–30. Under these circumstances, he cannot avail himself of the relation back doctrine by filing an amended complaint naming the identified officers after the statute of limitations has run. Indeed, Olivo has not even asked to file such an amended complaint.

## CONCLUSION

The motion is granted and the complaint is dismissed.

**SO ORDERED.**

Brooklyn, New York
August 4, 2015                              _____
                                            Edward R. Korman
                                            Senior United States District Judge